Nicholson, C. J.,
delivered the opinion of the Court.
This was an action of trespass, commenced in the Circuit Court of Union County. The allegations in the declaration are that the plaintiff in error, took from the defendant in error, a mare, to his damage two hundred and fifty dollars. The plea is, not guilty.
*168 At the June Term, 1868, the case was tried before a jury, who rendered a verdict for two hundred and eighty-six dollars, of which the defendant in error remitted thirty-six dollars. A motion for a new trial was overruled, and an appeal in error to this Court.
We are called upon to reverse the judgment in this case, for the want of sufficient evidence to support the verdict. This imposes upon us the duty of giving to the proof in connection with the charge of the Circuit Judge, a careful examination.
The allegation in the declaration is: “The plaintiff sues the defendant for two hundred and fifty dollars, for damages for wrongfully taking from him one bay mare.” The Circuit Judge charged the jury, that “ in order for a recovery the ■ proof must show that the defendant took the mare sued for, himself; or that he aided and abetted in the taking; or that he was present, and willing to aid and abet and assist in the taking, if assistance should be needed, and was there for the purpose, consenting unto the taking; or if the proof shows that a combination or conspiracy was entered into by the defendant with others, to take the mare, and that she was taken in pursuance of such conspiracy, each and all of such conspirators thus conspiring, would be liable in law. In case the proof show that the defendant, with others, were engaged in an unlawful purpose, aside from the taking of the plaintiff’s mare, as for instance, in a war against the United States, and some of the men so engaged took the mare, the defendant would not be liable for their acts, unless he had a hand in the taking of said mare.
*169 The proof is as follows: J. J. Sellers, witness for plaintiff, proved, that about the 20th of June, 1863, a body of rebel soldiers under command of Col. Scott, being in pursuit of a body of Federal soldiers, had stopped to feed their horses at the house of Mrs. Sailing. Col. Scott was sitting on the fence in front of Wm. Col-vins’ door. Defendant was there with a gun. He was a citizen and came up with the rear soldiers. Col. Scott made inquiry as to who he could get to carry a dispatch to Jacksboro’; and defendant said, here is a man, (meaning the witness,) who knows the country; send him, and said something about witness being a suitable man to carry the dispatch; but witness excused himself. In a few minutes, defendant had disappeared among the soldiers, and witness did not observe where he went. This was all the conversation between defendant and Col. Scott, that witness heard; that, in a few minutes after defendant had disappeared from witness’ observation, some rebel soldiers came up with plaintiff’s mare; that defendant had not had time to have gone where the mare was kept, which was in a stable in a clover field, three or four hundred yards off; and that defendant was not along with the soldiers who brought the mare up; that those with plaintiff’s mare went along the road the main body had taken, towards Clinch River. Defendant was with the soldiers, but in the rear.
G. I. "Wade, for plaintiff, proved that he was present when defendant rode up to where the rebel soldiers had stopped, he saw defendant with Col. Scott for some time, but heard him say nothing; that, before defendant came, witness heard Col. Scott order a lieutenant to get thirty horses to carry dispatches.
*170 Charlotte Carr proved that she saw Col. Seott sitting on the fence, and the defendant was standing talking to himj that defendant talked and pointed or made motions with his hands, and pointed in the direction of plaintiff’s, and towards Mrs. Sailing’s stable, and towards her brother’s horses, and they all lost their horses that day; and on cross-examination, she said the pointing was throwing his arms around in every direction. This was all the proof of plaintiff bearing upon the taking of the mare.
L. C. Lay, witness for defendant, proved that he was the son of plaintiff, and was a rebel soldier; that he was taken prisoner by the Federáis under Sanders, in Grainger County, south of Clinch Mountain, and was brought on by them and taken beyond Clinch River, where he was paroled and turned loose, and had recrossed the river and met defendant; that defendant started down the road, saying he was going down to Allen Hurst’s to see Eb. Hurst, a wounded rebel; that witness came on; after some time defendant overtook and passed him, going towards home, where he was when witness got home. Defendant was in company with the rebel soldiers and was armed.
Jane 'Wolfenbarger proved that she was the daughter of defendant and lived with him; that he was at home the evening before the rebels passed in pursuit of the Federáis, and was there when she went to bed and when she got up in the morning; that he was anxious to hear from, or of, his son, L. C. Lay, who was a rebel soldier, and defendant said he was going down to Maynardsville, .to try to hear something of his son; that defendant had no gun when he started.
*171 The proof accounts satisfactorily for the presence of defendant with the rebel soldiers. He was anxious to hear of his son, who belonged 'to the rebel army, and availed himself of the presence of the rebel troops to go in search of information. This is made clear from the fact that when he met his son, he turned back and came home. There was nothing unreasonable, when going on business, and in such company, that he should carry a gun. Assuming,' as we are authorized to do, from the proof, that when he came up with the rebel troops, where they had stopped, he was engaged in no unlawful enterprise, but merely in search of information as to his son, the question arises, did he say or do anything which, by fair implication, connected him with the taking of defendant’s mare? • It was natural that he should call on the commander of the troops, to let him know why he, being a citizen, was there. The proof of the only witness who heard the conversation, shows that the conversation between Colonel Scott and defendant, had reference entirely to the sending of a dispatch to Jacksboro’, so far as the witness heard the conversations. There was, doubtless, other conversation not heard by the witness. If anything was said by defendant about plaintiff’s mare, it was not heard by this or any other witness, and must be inferred alone from the proof of Charlotte- Carr. She heard nothing, but saw defendant pointing or making motions with his hands. The pointing, she says in explanation, was throwing his hands around in every direction. That this pointing or throwing his hands around had no reference to the taking of plaintiff’s mare is made reason *172 ably certain by the fact proven by Sellers, that the mare was brought up by some rebel soldiers, so soon after the conversation between defendant and Colonel Scott, that defendant could not have had time to go to where the mare was kept, and to have returned with her; and by the additional fact that defendant was not along with the rebel soldiers who brought up the mare. So far as the taking of the mare is concerned, it is perfectly certain that she was not taken by defendant; and the only ground upon which the jury could have determined that he was present, aiding or abetting the taking or consenting thereto, was, that witness saw defendant pointing or throwing his hands around in every direction. It is possible, but very improbable, that he may have been pointing out to Colonel Scott where plaintiff's mare was; but the other proof shows that it is more probable that the motions of his hands had reference to, or were produced by, the object of his visit to Colonel Scott, which was to obtain information as to his son. The verdict, therefore, rests alone upon the possible correctness of the inference that his pointing or throwing his hands around had some sort of connection with the taking of plaintiff’s mare. We do not think that a verdict resting solely upon an inference possibly true is supported by any evidence. We are, therefore, of opinion the Circuit Judge erred in not granting a new trial. The judgment is reversed, and the case remanded.